**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4459-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NETFA K. SIMON, a/k/a
SIMON NEFTA,

     Defendant-Appellant.

_____

Submitted May 11, 2020 – Decided July 10, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-01-0072.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Netfa K. Simon appeals from the trial court's order denying his postconviction relief (PCR) petition without an evidentiary hearing, arguing:

POINT ONE

THIS MATTER MUST BE REMANDED BECAUSE [DEFENDANT] WAS NOT PRESENT AT ORAL ARGUMENT AND HIS ABSENCE WAS NOT PROPERLY WAIVED BY COUNSEL.

POINT TWO

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INFORM HIM ADEQUATELY OF THE DEPORTATION CONSEQUENCES OF HIS PLEA.

We disagree and affirm.

Following the return of an indictment charging him with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (counts one and four); third-degree possession of CDS, with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (counts two and five); and third-degree possession of CDS with intent to distribute within a school zone, N.J.S.A. 2C:35-7 (counts three and six), defendant pleaded guilty to count three. Defendant, who told the court during the plea colloquy that he was from Trinidad, Spain and was not a United States citizen, claims his "counsel was ineffective for failing to advise

him of the mandatory deportation consequences of his plea[.]" He also argues counsel improperly waived his appearance at sentencing after Immigration and Customs Enforcement, who maintained defendant in custody during the deportation process, did not produce him.

Because the PCR court did not hold an evidentiary hearing, we review de novo both the factual inferences drawn by that court from the record and the court's legal conclusions. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

A plea counsel's performance is deficient under the first prong of the Strickland standard if counsel "provides false or misleading information

concerning the deportation consequences of a plea of guilty" to a noncitizen defendant. State v. Nuñez-Valdéz, 200 N.J. 129, 138 (2009). We previously recognized the United States Supreme Court's holding in Padilla v. Kentucky, 559 U.S. 356, 367 (2010), that plea counsel "is required to address, in some manner, the risk of immigration consequences of a non[]citizen defendant's guilty plea," Blake, 444 N.J. Super. at 295. The Padilla Court clarified that counsel's duty is not limited to avoiding dissemination of false or misleading information, but also includes an affirmative duty to inform a defendant entering a guilty plea of the relevant law pertaining to mandatory deportation. 559 U.S. at 369. Counsel's "failure to advise a noncitizen client that a guilty plea will lead to mandatory deportation deprives the client of the effective assistance of counsel guaranteed by the Sixth Amendment." State v. Barros, 425 N.J. Super. 329, 331 (App. Div. 2012). Accordingly, a noncitizen defendant considering whether to plead guilty to an offense must "receive[] correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012).

Although, we have held that "[i]n the 'numerous situations in which the deportation consequences of a particular plea are unclear . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal

A-4459-18T4

charges may carry a risk of adverse immigration consequences,'" Blake, 444 N.J. Super. at 295 (second alteration in original) (quoting Padilla, 559 U.S. at 369), "where the 'terms of the relevant immigration statute are succinct, clear and explicit in defining the removal consequence,' then an attorney is obliged to be 'equally clear,'" ibid. (quoting Padilla, 559 U.S. at 368-69). "[C]ounsel's failure to point out to a noncitizen client that he or she is pleading to a mandatorily removable offense [constitutes] deficient performance of counsel[.]" Id. at 300 (first alteration in original) (emphasis omitted) (quoting State v. Gaitan, 209 N.J. 339, 380 (2012)).

Unsupported averments, however, do not establish a prima facie case requiring an evidentiary hearing. R. 3:22-10(b); State v. Preciose, 129 N.J. 451, 462-63 (1992). A "defendant must allege specific facts and evidence supporting his allegations," State v. Porter, 216 N.J. 343, 355 (2013), and "do more than make bald assertions that he was denied the effective assistance of counsel," State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

The only proffer defendant made regarding counsel's deficient performance was the bald assertion in his certification submitted in support of his PCR petition that his counsel "failed to inform [him] that [he] faced mandatory deportation after [he] entered a guilty plea to a drug distribution

5

offense," and that had he been so informed, he "would not have entered a guilty plea [because he] believe[d] the State's evidence . . . was weak and [he] reasonably believe[d he] could have prevailed at trial."

In answer to question seventeen on the plea form, defendant acknowledged he was not a United States citizen, understood his guilty plea may have resulted in his removal from the United States and that he had "the right to seek individualized advice from an attorney about the effect [his] guilty plea [would] have on [his] immigration status." He affirmed that he discussed "the potential immigration consequences" of the plea with counsel.

During the plea hearing, the court established defendant could read and write English, and confirmed defendant reviewed all the questions, signed the plea forms and that the answers he gave were true. After defendant admitted he was not a United States citizen, the trial court questioned defendant about the immigration consequences of the plea agreement:

> [THE COURT:] Okay. Do you understand that by entering this guilty plea . . . you could have adverse immigration consequences including removal from this country? Do you understand that?
>
> [DEFENDANT:] Yes, Your Honor.
>
> [THE COURT:] And in understanding that, do you still wish to proceed today?

[DEFENDANT:] Yes, Your Honor.

[THE COURT:] Okay. Would you like to speak with an immigration attorney before you speak –

[DEFENDANT:] No, Your Honor.

Although it is not typical for courts to solely rely on a written plea form when taking a plea, State v. Kovack, 91 N.J. 476, 484 n.1 (1982), we are satisfied that the clear terms of the plea form in combination with the trial court's colloquy with defendant belied defendant's naked assertion that counsel misinformed him about deportation consequences. "Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." Blake, 444 N.J. Super. at 299. Defendant's bald averments, belied by the record, do not establish a prima facie claim. And, an evidentiary hearing is not to be used to explore PCR claims. See State v. Marshall, 148 N.J. 89, 157-58 (1997). As such, an evidentiary hearing was properly denied.

We also discern defendant failed to meet the second prong of the Strickland-Fritz test. In that this PCR petition involves a plea agreement, "defendant must show that (i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not

7

have [pleaded] guilty and would have insisted on going to trial.'" Nuñez-Valdéz, 200 N.J. at 139 (first alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

Defendant was sentenced to the lowest possible probationary sentence of one year, N.J.S.A. 2C:45-2(a), even though he faced a mandatory sentence including a period of parole ineligibility because the violation involved less than one-half ounce of heroin, N.J.S.A. 2C:35-7(a). Contrary to defendant's assertion that the State's case was weak and he believed he could have prevailed at trial, the State's allegations, as set forth in the presentence report, were that police officers observed defendant standing on the sidewalk with another male by an abandoned house when defendant placed a black bag in his rear waistband. As the officers approached in their vehicle, defendant shifted the bag in his waistband. When the officers exited the vehicle and approached defendant, he "began to shift his body turning the area where he placed the items away from the officers. When advised of the officers observation, he spontaneously uttered[,] 'I only got [three] bags of weed on me.' He retrieved the bag and placed it onto the vehicle he was standing by." The officers were able to see three bundles of heroin held together by rubber bands and several small bags of suspected crack cocaine in the open bag.

Moreover, defendant's probationary sentence was based on his cooperation with law enforcement which the court weighed "heavily"—as requested by the State—in sentencing defendant, making clear defendant did not anticipate going to trial. We further note that not only were all other counts of this indictment dismissed at sentencing, so too were counts in two other indictments, including: first-degree robbery, N.J.S.A. 2C:15-1; third-degree unlawful possession of a weapon – handgun, N.J.S.A. 2C:39-5(b); third-degree possession of a weapon for an unlawful purpose – firearm, N.J.S.A. 2C:39-4(a); fourth-degree prohibited weapon possession – defaced firearm, N.J.S.A. 2C:39-3(d); fourth-degree prohibited weapon possession – dum-dum bullet, N.J.S.A. 2C:39-3(f); second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b); three counts of second-degree official misconduct, N.J.S.A. 2C:30-2(a); and three counts of second-degree conspiracy – agree/engage in conduct that constitutes a crime, N.J.S.A. 2C:5-2(a)(1). Defendant also pleaded guilty to third-degree pattern of official misconduct, N.J.S.A. 2C:30-7(a), under a separate indictment that is not the subject of this appeal. The State, as it did for the school-zone case, asked the court to impose a probationary sentence on that matter, although it noted that crime carried a mandatory period of incarceration. See N.J.S.A. 2C:43-6.5. The sentencing transcript reveals the court abided by

that request and ran both probationary terms concurrent. And, defendant's sentence ran concurrent to a violation of probation he faced in New York because he was on probation at the time he committed the drug offense.

Defendant's criminal history included two prior New Jersey indictable convictions, nine municipal court convictions and the New York conviction. Under the circumstances, even if trial counsel was ineffective—which we do not determine or suggest—defendant has failed to show that "but for counsel's [alleged] errors, [he] would not have [pleaded] guilty and would have insisted on going to trial." See ibid. (quoting DiFrisco, 137 N.J. at 457).

Defendant's remaining arguments, including his request for a remand because his presence at the PCR oral argument was improperly waived, and that the court's remark at sentencing—"hopefully I don't see him again"—supported his claim "that counsel was under the misunderstanding that [defendant] was not mandatorily deportable," are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). We note only that a defendant has the right to be present only when oral testimony is adduced at a PCR hearing. R. 3:22-10(a). Although there is no evidence in the record that defendant requested that counsel waive his appearance, the waiver-by-counsel upon defendant's request provision in Rule 3:22-10(a) pertains to those proceedings. Ibid. Defendant's presence at

10

other PCR proceedings are in the court's discretion. <u>Ibid.</u> As noted, the court did not take testimony at the PCR hearing. And, the court's off-hand remark about not seeing defendant again, in context, did not relate to any conversation regarding immigration consequences.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION